UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

No. _____ 2 : 08 cv 443

| | | |
|---|---|---|
| RICK TOM, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | JUDGE SARGUS |
| vs. | ) ) | Judge _____ |
| HUNTINGTON BANCSHARES INCORPORATED (as successor in interest to Sky Financial Group, Inc.), MARTY E. ADAMS, and KEVIN T. THOMPSON, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | CLASS ACTION  DEMAND FOR JURY TRIAL |

Plaintiff's Original Class Action Complaint

Plaintiff Rick Tom, individually and on behalf of all others similarly situated, complains

of defendants Huntington Bancshares Incorporated, Marty E. Adams, and Kevin T. Thompson as

follows.

I.

Introduction

This is a strict liability securities fraud case arising from the misconduct of Sky Financial

Group, Inc. ("Sky Financial"), Sky Financial's former Chairman, President and CEO Marty E.

Adams, and Sky Financial's former Executive Vice President and CFO Kevin T. Thompson, in

connection with Sky Financial's acquisition of the Waterfield Mortgage Company, Inc.

("Waterfield").  Huntington is a defendant in this lawsuit because it is the successor in interest to

Sky Financial and is liable for Sky Financial's violations of § 11 and § 12 of the Securities Act

of 1933 in connection with Sky Financial's 2006 acquisition of Waterfield.

In October 2006, Sky Financial acquired Waterfield Mortgage Company, Incorporated ("Waterfield"). In connection with that transaction, the former shareholders of Waterfield exchanged all of their stock in Waterfield for stock in Sky Financial plus some cash. Plaintiff and the other members of the plaintiff class in this case are the former shareholders of Waterfield who acquired their stock in Sky Financial in connection with Sky Financial's acquisition of Waterfield. This lawsuit concerns Sky Financial's violations of § 11 and § 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l, through its use of registration and proxy statements that contained false and misleading statements of material fact and that omitted material information leading up the Waterfield acquisition.[1]

Section 11 is a strict liability statute. Section 11 imposes liability "[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."

- Section 11 "was designed to assure compliance with the disclosure requirements of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381-82 (1983).

- Under § 11, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Albert Fadem Trust v. American Elec. Power Co.,* 334 F. Supp. 2d 985, 1005 (S.D. Ohio 2004) (quoting *Herman & MacLean,* 459 U.S. at 382).

- "Section 11 is a strict liability statute. Violation of section 11 does not require proof of plaintiff's reliance or any of the elements of fraud." *Amtower v. Photon Dynamics,* 2008 WL 151268, *7 (Cal. Rptr. 3d Jan. 17, 2008).

---

[1] This lawsuit is separate and distinct from certain other class action securities lawsuits, shareholder derivative lawsuits, and ERISA lawsuits recently filed against Huntington. Those lawsuits complain about Huntington's breach of fiduciary duty and mismanagement in connection with Huntington's July 2007 merger with Sky Financial and complain about Huntington's misstatements and omissions starting in July 2007 – events that began some nine months after completion of the Sky Financial/Waterfield transaction at issue in this case.

- "No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1404 (9th Cir 1996).

- "Loss causation (i.e. a causal connection between the material misrepresentation or omission and plaintiff's loss) is not an element of a § 11 claim." *Levine v. AtriCure,* 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007).

Sky Financial's violations of § 11 (and § 12) in connection with its acquisition of Waterfield expose its successor in interest, Huntington, to tens of millions of dollars in liability to plaintiff and the class.

II.

## Parties

Plaintiff Rick Tom is an individual residing in Ft. Wayne, Indiana. Please see the certification attached as Exhibit 1.

Defendant Huntington Bancshares Incorporated ("Huntington") is a Maryland corporation with its principal place of business in Columbus, Ohio, and may be served with process and a copy of this Complaint by serving its registered agent Richard A. Cheap, Secretary, Huntington Center, 41 South High Street, Columbus, Ohio 43215. On July 1, 2007, Huntington merged with and acquired Sky Financial Group, Inc. ("Sky Financial"), such that all shares of Sky Financial common stock were converted into shares of Huntington common stock and Huntington was the continuing entity following the merger. Huntington is the successor in interest to Sky Financial, and Huntington has assumed and is responsible for all of Sky Financial's liabilities at issue in this lawsuit.

Defendant Marty E. Adams ("Adams") is an individual residing in Salineville, Ohio, and may be served with process and a copy of this Complaint by serving him at 13 Township Road 294, Salineville, Ohio 43945. Adams was Sky Financial's Chairman, President and CEO, and he signed Sky Financial's registration statements at issue in this case.

Defendant Kevin T. Thompson ("Thompson") is an individual residing in Bowling Green, Ohio, and may be served with process and a copy of this Complaint by serving him at 20720 Carter Road, Bowling Green, Ohio 43402. Thompson was Sky Financial's executive vice president and CFO, and he signed Sky Financial's registration statements at issue in this case.

III.

### Jurisdiction and Venue

This Court has jurisdiction over this matter under § 22 of the Securities Act of 1933, and under 28 U.S.C. §§ 1331 and 1332. Plaintiff and the class seek to recover an amount of damages in excess of the minimum jurisdictional requirements of this Court.

Personal jurisdiction and venue are proper in this district because defendant Huntington may be found in this district and transacts business in this district, Huntington is an inhabitant of this district, Huntington's headquarters is in this district, part of the offer or sale of securities at issue in this case occurred in this district, and Huntington's principal place of business is in this district. Huntington's main executive offices are located at Huntington Center, 41 South High Street, Columbus, Ohio.

Personal jurisdiction and venue also are proper in this district because, following Sky Financial's July 2007 transaction with Huntington, defendant Adams served as Huntington's President and Chief Operating Officer, and conducted a substantial amount of business in this district. On information and belief, defendant Thompson regularly transacted business in and around this district in his capacity as Sky Financial's EVP and CFO for various reasons, including for the operation and sale of Sky Financial Solutions, Inc., a subsidiary of Sky Financial that was based in this district, for Sky Financial's purchase and assimilation of Prospect Bank, which was based in this district, and in connection with Sky Financial's

4

transaction with Huntington.

Personal jurisdiction and venue also are proper in this district because a substantial part of the events or omissions giving rise to, and at issue in, this lawsuit occurred in this district.

IV.

Facts

The shares of stock held by plaintiff and the members of the class were converted into shares of stock in Sky Financial in connection with the October 2006 Sky Financial/Waterfield transaction and then converted into shares of stock in Huntington in connection with the July 2007 Huntington/Sky Financial transaction.

Sky Financial Acquired Waterfield in October 2006

Plaintiff and the members of the plaintiff class are former shareholders of Waterfield, which was a holding company headquartered and incorporated in Indiana.

On February 3, 2006, Sky Financial issued a press release and announced that it would acquire Waterfield in a transaction valued at $330 million.

On April 5, 2006, Sky Financial filed a Form S-4 Registration Statement and proxy statement/prospectus ("Registration Statement") in connection with Sky Financial's acquisition of Waterfield. On July 26, 2006, Sky Financial filed a near identical Form S-4/A Amendment No. 1 and proxy statement/prospectus ("Amended Registration Statement") to its April 5, 2006 Form S-4 Registration Statement. Sky Financial's chairman, president and CEO Adams signed the Registration Statement and the Amended Registration Statement. Sky Financial's executive vice president and CFO Thompson signed the Registration Statement and the Amended Registration Statement.

On October 18, 2006, Sky Financial announced that it had completed its acquisition of

Waterfield in a transaction valued at $321.5 million. In connection with the merger, each share of Waterfield stock was converted into 4.38 shares of Sky Financial common stock, and each Waterfield shareholder also was entitled to a cash payment of $80.07 per share of Waterfield stock. The conversion of plaintiff's and the class members' Waterfield stock into Sky Financial stock was accomplished pursuant to Sky Financial's Registration Statement and Amended Registration Statement and, thus, plaintiff and the class members properly may assert claims against Sky Financial (and its successor in interest Huntington) under §§ 11 and 12 of the Securities Act of 1933.

On October 18, 2006, Sky Financial's common stock closed at approximately $24.90 per share. This is the approximate price at which plaintiff's and the class members' shares of Waterfield stock were exchanged for and converted into shares of Sky Financial stock, and is the approximate price that plaintiff and the class members "paid" for their shares of Sky Financial stock.

On November 20, 2006, plaintiff's shares of Sky Financial stock were deposited into his brokerage account and reflected a price of $25.18 per share.

<u>Sky Financial Merged with and into Huntington in July 2007</u>

On December 20, 2006, Huntington announced that it had signed a "definitive agreement to merge" with Sky Financial and that Sky Financial shareholders (including plaintiff and the class members) would receive 1.098 shares of Huntington stock plus $3.023 in cash for each share of Sky Financial stock.

On July 2, 2007, Huntington issued a press release and announced that it had completed its merger with Sky Financial in a transaction valued at $3.3 billion based on the $22.74 closing price of Huntington's common stock on June 29, 2007. In that transaction, each share of Sky

Financial common stock that plaintiff and the other class members received in connection with the Sky Financial/Waterfield transaction converted to 1.098 shares of Huntington common stock.

As a result of the Sky Financial/Waterfield transaction and the Huntington/Sky Financial transaction, and unless earlier disposed of, each share of Waterfield stock that had been held by plaintiff and the class members was converted into 4.80924 shares of Huntington stock.

Untrue and Misleading Statements/Omissions
In Sky Financial's Registration Statements

At the time they became effective, Sky Financial's April 5, 2006 Registration Statement and its July 26, 2006 Amended Registration Statement contained untrue statements of a material fact and omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

Sky Financials' Undisclosed Billion Dollar Lending Relationship
With Sub-Prime Residential Mortgage Company Franklin Credit Management Corporation

In its Registration Statement and Amended Registration Statement, Sky Financial failed to disclose its lending relationship with Franklin Credit Management Corporation ("Franklin Credit"). Franklin Credit is a consumer finance company primarily engaged in the acquisition, servicing and resolution of performing, reperforming and nonperforming residential mortgage loans and real estate assets, and (2) the origination of non-prime mortgage loans, both for its portfolio and for sale into the secondary market. Franklin Credit specializes in originating residential mortgage loans that generally fall outside the underwriting standards of Fannie Mae and Freddie Mac and involve elevated credit risk as a result of the nature or absence of income documentation, limited credit histories, higher levels of consumer debt or past credit difficulties. Franklin Credit refers to the types of loans it makes in the sub-prime residential mortgage loan market as "scratch and dent" loans. Franklin Credit and its affiliates accounted for

approximately 10% of the amount in loans that Sky Financial had outstanding at the time of the Waterfield transaction.

Sky Financial's Registration Statement and Amended Registration Statement omit any mention of Franklin Credit by name, omit any mention of Franklin Credit by description of its business, omit any mention of the nature of Sky Financial's relationship with Franklin Credit, omit any mention or description of Sky Financial's loans to Franklin Credit, omit any mention of the magnitude of Sky Financial's loans to Franklin Credit, omit any mention of the fact that Sky Financial had loaned more than $1.2 billion to Franklin Credit and its subsidiaries, omit any mention of the fact that the more than $1.2 billion that Sky Financial had loaned to Franklin Credit and its subsidiaries had been used in connection with the sub-prime residential real estate market, omit any mention of the poor and risky nature of the security underlying Sky Financial's loans to Franklin Credit, and omit any discussion about the nature of the underlying security (or of the loans or of Franklin Credit) at all. Sky Financial's Registration Statement and Amended Registration Statement failed to provide plaintiff and the rest of the class with any information at all about Sky Financial's relationship with Franklin Credit.

Sky Financial's Registration Statement and Amended Registration Statement omit any mention, either specifically or generally, of the enormous concentration risk to which Sky Financial had exposed itself by concentrating nearly 10% of its loan portfolio with a single borrower which, as it turns out, happened to be Franklin Credit.

As of the Sky Financial's filing of its April 2006 Registration Statement and its July 2006 Amended Registration Statement with the SEC, Sky Financial had a 16 year relationship with Franklin Credit. Since the early 1990s, Sky Financial historically had provided Franklin Credit with the financing for Franklin Credit's acquisitions of mortgage loan portfolios and its

8

origination of mortgage loans. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the duration, strength or nature of Sky Financial's relationship with Franklin Credit.

On October 13, 2004, Sky Financial's wholly-owned subsidiary Sky Bank (collectively "Sky Financial") entered into a Master Credit and Security Agreement with Franklin Credit. Sky Financial's Registration Statement and Amended Registration Statement do not disclose the existence of this October 2004 Master Credit and Security Agreement with Franklin Credit.

Under the October 2004 Master Credit and Security Agreement, Franklin Credit and certain of its subsidiaries (excluding Franklin Credit's subsidiary Tribeca Lending Corp.) requested loans from Sky Financial for the purpose of financing the purchase of residential mortgage loans or refinancing of existing outstanding residential mortgage loans. As of December 31, 2005 – a few months before Sky Financial filed its April 2006 Registration Statement – Franklin Credit and its subsidiaries (excluding Tribeca) had borrowed from and owed to Sky Financial $884.4 million under the October 2004 Master Credit and Security Agreement. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the Sky Financial/Franklin Credit October 2004 Master Credit and Security Agreement by this or any name, and omit any description of this relationship. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the magnitude of loans ($884.4 million) that Sky Financial had made to Franklin Credit as of the end of 2005. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that these loans were made and used for the purpose of financing the purchase of residential mortgage loans or refinancing of existing outstanding residential mortgage loans. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the

fact that Franklin Credit's obligations under the October 2004 Master Credit and Security Agreement were secured by a first priority lien on loans acquired by Franklin Credit that are financed by proceeds of Sky Financial's loans made to Franklin Credit under this same October 2004 Master Credit and Security Agreement.

On October 18, 2005, Sky Financial and Franklin Credit's subsidiary Tribeca Lending Corp. and certain of Tribeca's subsidiaries entered into a warehousing credit and security agreement with Sky Financial. (Franklin Credit had formed Tribeca in 1997 in order to capitalize on Franklin Credit's experience in evaluating and servicing "scratch and dent" residential mortgage loans and to originate primarily non-prime residential mortgage loans to individuals whose documentation, credit histories, income and other factors cause them to be classified as non-prime borrowers and to whom, as a result, conventional mortgage lenders often would not make loans.) This warehousing credit and security agreement was to be used by Tribeca for the purpose of originating mortgage loans. This warehousing credit and security agreement is separate from and in addition to the October 2004 Master Credit and Security Agreement, and is separate from and in addition to Sky Financial's term loans to Tribeca. As of December 31, 2005, Sky Financial had loaned to Tribeca an additional $56.3 million under the warehousing credit and security agreement. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that Sky Financial had entered into warehousing credit and security agreement with Franklin Credit's subsidiary Tribeca. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that Sky Financial had made loans to Franklin Credit or its subsidiary Tribeca under a warehousing credit and security agreement. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the magnitude of the loans ($56.3 million)

that Sky Financial had made to Franklin Credit's subsidiary Tribeca under the warehousing credit and security agreement as of the end of 2005. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of how Franklin Credit's and Tribeca's obligations under the warehousing credit and security agreement were secured.

Sky Financial also made term loans to Franklin Credit's subsidiary Tribeca Lending Corp. and certain of Tribeca's subsidiaries. These terms loans were separate from and in addition to loans made under the Sky Financial/Franklin Credit October 2004 Master Credit and Security Agreement, and separate from and in addition to loans made under Sky Financial's warehousing credit and security agreement with Franklin Credit's subsidiary Tribeca. As of December 31, 2005, Sky Financial had loaned to Franklin Credit's subsidiary Tribeca an additional $322.3 million in term loans from Sky Financial to refinance outstanding advances under the warehousing credit and security agreement with Sky Financial. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of Franklin Credit's subsidiary Tribeca. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that Sky Financial made term loans to Franklin Credit or to its subsidiary Tribeca. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the magnitude of the term loans ($322.3 million) that Sky Financial had made to Franklin Credit's subsidiary Tribeca as of the end of 2005. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of how these term loans were secured.

As of December 31, 2005, Sky Financial had made outstanding loans to Franklin Credit and its subsidiaries in the aggregate amount of approximately $1.263 billion. This $1.263 billion amount of Sky Financial's loans to Franklin Credit and its subsidiaries consisted of $884.4

million in loans under the October 2004 Master Credit and Security Agreement, $56.3 million in loans under the warehousing credit and security agreement, and $322.3 million in term loans. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of this $1.263 billion amount (or anything close to this magnitude) of loans to Franklin Credit and its subsidiaries. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of this $1.263 billion amount (or anything close to this magnitude) of loans to any single entity, whether it be Franklin Credit or any other entity. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of this $1.263 billion amount (or anything close to this magnitude) of loans to an entity that, as Franklin Credit and its subsidiaries did, used the loans for the purpose of originating residential mortgage loans, financing the purchase of residential mortgage loans, and refinancing existing outstanding residential mortgage loans. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of this $1.263 billion amount (or anything close to this magnitude) of loans to an entity that, as Franklin Credit and its subsidiaries did, specialized in originating residential mortgage loans that generally fall outside the underwriting standards of Fannie Mae and Freddie Mac and involve elevated credit risk as a result of the nature or absence of income documentation, limited credit histories, higher levels of consumer debt or past credit difficulties.

On February 28, 2006, Franklin Credit's wholly-owned subsidiary Tribeca and certain of its subsidiaries entered into a Master Credit and Security Agreement with Sky Financial, pursuant to which certain of Tribeca's subsidiaries were permitted to borrow funds to finance their acquisition of loans Tribeca previously financed under its warehouse line of credit with Sky Bank and to consolidate and refinance prior term loans made by Sky Financial to these same subsidiaries of Tribeca. Tribeca's and its subsidiaries borrowings from Sky Financial under this

Master Credit and Security Agreement were secured by a first priority lien on loans by Tribeca and its subsidiaries that are financed or refinanced with proceeds of loans made by Sky Financial to Tribeca or its subsidiaries under this same Master Credit and Security Agreement. On February 28, 2006, upon Sky Financial's and Franklin Credit's Tribeca's execution of the Master Credit and Security Agreement, various outstanding term loan and security agreements totaling approximately $379 million were converted into and came under the Master Credit and Security Agreement. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of this new Master Credit and Security Agreement, or the $379 million in outstanding loans that were converted into and came under the Master Credit and Security Agreement, and of how these term loans were secured. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that Sky Financial provided a substantial majority of Franklin Credit's external financing and that, if Franklin Credit lost access to Sky Financial's loans, Franklin Credit would not have the liquidity to fund its business operations. Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that Franklin Credit depended on its lending/borrowing relationship with Sky Financial to provide the cash necessary to fund Franklin Credit's acquisition of scratch and dent loans and to fund Franklin Credit's origination of non-prime residential mortgages.

Sky Financial's Omissions/Untrue Representations About Its "Conservative Credit Culture"

In its Registration Statement and Amended Registration Statement and in documents incorporated by reference into the Registration Statement, Sky Financial made affirmative untrue representations about its "conservative credit culture" and made similar untrue representations that further compounded its omissions about Franklin Credit, its omissions about its concentrated and substantial lending relationship Franklin Credit, and its omissions about its enormous

exposure to the sub-prime residential mortgage market. Rather than disclose Sky Financial's enormous exposure to the risky sub-prime residential mortgage market, Sky Financial's Registration Statement at page 28 and its Amended Registration Statement at page 27 described Sky Financial in these more prosaic terms: "Sky Financial's corporate philosophy is to operate as a locally-oriented, community-based financial service organization, augmented by centralized support in select critical areas."

In its February 23, 2006 Form 10-K Annual Report, incorporated by reference into the Registration Statement and Amended Registration Statement, Sky Financial represented that its "strong asset quality has always been one of our strategic priorities and a characteristic strength of our company." Sky Financial reported that "[w]e were pleased with the significant reduction in non-performing loans accomplished during the year, and we are confident that our conservative credit culture and prudent lending procedures that have historically led to sound asset quality will continue to support our growth strategies in 2006 and beyond." Sky Financial reported that "reductions to non-performing assets by the end of 2005 improved Sky Financial's overall asset quality and Sky Financial's management does not believe that 2005's higher credit losses are indicitive [sic] of future credit losses."

In its March 1, 2006 Form 8-K, incorporated by reference into the Registration Statement and Amended Registration Statement, Sky Financial touted its "risk management" and "credit standards," its "conservative credit culture," and its "disciplined lending practices."

Sky Financial's Registration Statement and Amended Registration Statement omit any mention of the fact that its lending relationship with Franklin Credit, as described more fully above, was inconsistent with Sky Financial's untrue and misleading representations about its "risk management" and "credit standards," its "conservative credit culture," and its "disciplined

14

lending practices." Sky Financial's Registration Statement and Amended Registration Statement also, of course, omit any mention of the risky nature of Franklin Credit's business, omit any mention of the risky nature of Sky Financial's loans to Franklin Credit, omit any mention of the minimal and inadequate risk mitigation measures in place, omit any mention of the poor trends in credit quality performance at Franklin Credit, omit any mention of the poor trends in delinquency and loss rates at Franklin Credit, and omit any mention of the general risks associated with having approximately 10% of Sky Financial's loans concentrated with one borrower.

<u>Sky Financial's Omissions/Untrue Representations About The Characteristics Of Its Loans</u>

In its April 28, 2006 Form 10-Q, incorporated by reference into the Amended Registration Statement, Sky Financial represented that its loan portfolio was as follows:

|  | March 31, 2006 | December 31, 2005 |
|---|---|---|
| Real estate loans: |  |  |
| Construction | $ 1,019,935 | $ 1,012,745 |
| Residential Mortgage | 2,873,805 | 2,916,248 |
| Non-residential mortgage | 3,468,168 | 3,488,684 |
| Commercial, financial and agricultural | 3,036,618 | 3,024,337 |
| Installment and credit card loans | 695,392 | 707,208 |
| Total loans | $11,093,918 | $11,149,222 |

In its February 23, 2006 Form 10-K Annual Report, incorporated by reference into the Registration Statement and Amended Registration Statement, Sky Financial also had represented the information above as of December 31, 2005. In "Management's Discussion and Analysis of Financial Condition and Results of Operation" in the February 23, 2006 Form 10-K, Sky Financial represented that "[t]he primary source of Sky Financial's revenue is net interest income from loans and deposits, and fee income." Sky Financial made untrue and materially misleading representations about how its loan portfolio was split between "commercial, financial and

agricultural" loans and "residential mortgage" loans.

With respect to "commercial, financial and agricultural" loans, Sky Financial represented (as it did again in its April 28, 2006 Form 10-Q) that it had $3.024 billion in loans which it described this way:

> Commercial, financial and agricultural loans comprised 27% of the total loan portfolio at December 31, 2005. This loan category includes loans to a wide variety of businesses, small and large, across many industries and regions. Sky Financial's commercial lending policy requires each loan to have viable repayment sources.

Sky Financial falsely and misleadingly mischaracterized and included its $1.2 billion in loans to Franklin Credit in this "commercial" loan category without making any disclosures necessary to make other statements not misleading such as, e.g., that the $1.2 billion in so-called commercial loans actually was used for residential mortgage loans and sub-prime loans at that.

With respect to "residential mortgage" loans, Sky Financial represented (as it did again in its April 28, 2006 Form 10-Q) that it had $2.916 billion in loans which it described this way:

> Residential mortgage loans were 26% of the total loan portfolio at December 31, 2005. The residential mortgage portfolio contains loans to consumers secured by residential mortgages."

In its February 23, 2006 Form 10-K and in its April 28, 2006 Form 10-Q, both incorporated by reference into the Registration Statement and Amended Registration Statement, Sky Financial made untrue and materially misleading representations and characterizations about its $1.2 billion in loans to Franklin Credit and its subsidiary Tribeca. Sky Financial included its $1.2 billion in loans to Franklin Credit (which, of course, Sky Financial did not identify by name or by description) in its "commercial, financial and agricultural" loan category rather than in its "residential mortgage" category. Sky Financial did so even though it knew that Franklin Credit and its subsidiaries used this $1.2 billion of Sky Financial's loans for the purpose of originating

16

and acquiring residential mortgages, and sub-prime residential mortgages at that. Sky Financial's representations about the characteristics of and categorization of its loans to Franklin Credit as "commercial, financial and agricultural" rather than as "residential mortgage" were untrue and misleading. In addition, Sky Financial's omissions with respect to its relationship with Franklin Credit and with respect to Franklin Credit's uses of Sky Financial's loans were omissions to state material facts required to be stated and were necessary to make Sky Financial's statements not misleading; at a minimum and in order to make its representation not materially misleading, Sky Financial had to disclose the material fact that all or nearly all of its $1.2 billion in loans to Franklin Credit were loans for the purpose of originating and acquiring residential mortgages. Characterizing Sky Financial's loans to Franklin Credit as "residential mortgage" loans rather than as "commercial, financial and agricultural" loans changes the untrue and misleading percentages that Sky Financial reported, and incorporated into its Registration Statement, to approximately 16.2% (rather than 27%) "commercial, financial and agricultural" loans and to approximately 37% (rather than 26%) "residential mortgage" loans.

Huntington Acquired Sky Financial

On July 1, 2007, Huntington completed its merger transaction with Sky Financial. The shares of Huntington common stock issued to effect the merger were recorded at $23.85 per share. This amount was determined by averaging the closing prices of Huntington common stock over a five-day period beginning two days before the date the merger was announced and ending two days after the date the merger was announced.

As a result of the Huntington/Sky Financial merger transaction, all shares of Sky Financial common stock that plaintiff and the class members received (and still held) in connection with the Sky Financial/Waterfield transaction were converted into shares of

Huntington common stock.

Huntington is the successor in interest to Sky Financial. Sky Financial was merged into Huntington, with Huntington as the surviving entity of the merged companies and with Sky Financial ceasing to exist. Huntington is responsible and liable for the claims and liabilities at issue in this lawsuit. Huntington is liable to plaintiff and the class for the material untrue statements, omissions, and misrepresentations in Sky Financial's April 2006 Registration Statement and July 2006 Amended Registration Statement. The December 20, 2006 Agreement and Plan of Merger by and among Huntington Bancshares Incorporated, Penguin Acquisition, LLC, and Sky Financial Group, Inc. provides in § 1.3 "Effects of the Merger" that "[a]t and after the Effective Time, the Merger shall have the effects set forth in Section 1701.82 of the OGCL and Section 4A-709 of the MLLCA." *See also* Ohio General Corporation Law § 3-114; Maryland Limited Liability Company Act § 4A-709.

Huntington's Corrective Announcements

On November 15, 2007, Huntington's common stock closed at $16.06 per share. On November 16, 2007, Huntington issued a press release that contained material information that had not been disclosed in Sky Financial's April 2006 Registration Statement and July 2006 Amended Registration Statement, and that was materially and qualitatively different from information that previously had been disclosed. Huntington announced that:

> As a result of the recently announced actions of Franklin Credit Management Corporation (NASDAQ: FCMC)[2] and related deterioration in Franklin's mortgage portfolios, 2007 fourth quarter results for Huntington Bancshares Incorporated (NASDAQ: HBAN; www.huntington.com) are expected to include an after-tax

---

[2] The day before, on November 15, 2007, Franklin had issued a press release and announced that it had delayed the filing of its Form 10-Q and the release of its 2007 third quarter results in order to conduct a thorough review of the adequacy of its loan loss reserve. Franklin announced that it expected its credit review to result in a "substantial increase" in its 2007 third quarter provision for loan losses due to increased delinquencies and the expectation of increased defaults and losses in its loan portfolio.

charge of up to $300 million, or $0.81 per common share, to replenish and build the allowance for loan and lease losses in support of the Franklin relationship. As a result of this charge, Huntington will report a 2007 fourth quarter net loss.

"For over 17 years Sky Financial had a commercial lending relationship with Franklin Credit Management Corporation. This became our relationship when we acquired Sky Financial on July 1, 2007," said Thomas E. Hoaglin, chairman and chief executive officer. . . . "At September 30, 2007, our loans to Franklin totaled $1.5 billion. . . .

We only recently learned of Franklin's actions to reassess the adequacy of their loan loss reserves" he continued. "Franklin's mortgages represent the underlying collateral for our loans to Franklin."

. . .

Franklin's primary business is to acquire, service, and resolve seasoned performing, re-performing, and nonperforming first- and second-priority lien residential mortgage loans and real estate assets. Through their wholly-owned subsidiary, Tribeca Lending Corp (Tribeca), Franklin also originates maximum 75% loan-to-value non-prime mortgage loans for their own portfolio. Tribeca currently accounts for approximately 25% of Franklin's business activities.

On November 16, 2007, Huntington's common stock closed at $14.75 per share, down 8.27% from the day before. On November 19, 2007, the next day of trading, Huntington's common stock closed at $14.20 per share, down another 3.73% from the day before and down 11.58% from its November 15, 2007 closing price. On November 20, 2007, Huntington's common stock closed at $13.90 per share, down another 2.11% from the day before and down 13.45% from its November 15, 2007 closing price.

On December 3, 2007, Huntington announced that its president and COO Marty E. Adams – who had been Sky Financial's chairman, president and CEO before the Huntington/Sky Financial merger – "will retire as president and chief operating officer" and that he "decided to retire so [he] can remain in close proximity to [his] parents."

On January 10, 2008, Huntington issued a press release and announced a "2007 fourth quarter net loss of $0.65 per common share," or $239 million, reflecting a charge of "$424 million pre-tax ($275 million after-tax, or $0.75 per common share) related to the Franklin Credit

Management Corporation (Franklin) relationship." Huntington's January 10, 2008 press release

reported:

> Commenting on the quarter, Thomas E. Hoaglin, chairman, president and chief executive officer said, "These results were well below our expectations. The item impacting results most negatively was the previously announced restructuring of the Franklin relationship. Though a negative this quarter, its successful restructuring, we believe, addresses fully the current and anticipated financial performance issues associated with this relationship. . . ."

> Huntington expects to report total non-performing assets of about $1.7 billion, with $1.2 billion representing the restructured Franklin loans. . . . Total net charge-offs will approximate $378 million, including the $308 million related to the Franklin restructuring, up from $47 million in the third quarter.

On January 10, 2007, Huntington's common stock closed at $12.65 per share, down

4.38% from its closing price the day before.

On January 17, 2008, Huntington issued a press release and "reported a 2007 fourth

quarter net loss of $239.3 million, or $0.65 per common share." With respect to its 2007 fourth

quarter performance, Huntington reported that:

- "earnings were negatively impacted by $1.00 per common share consisting of costs associated with Franklin Credit Management Corporation (Franklin), market related losses, merger costs, a VISA indemnification charge, and increases to litigation reserves on existing cases."

- "$512.1 million of total provisions for credit losses, consisting of $405.8 million for Franklin and $106.2 million for non-Franklin-related" credit losses.

- "$377.9 million of net charge-offs, including $308.5 million related to the Franklin restructuring, up from $47.1 million in the third quarter."

- "$1.660 billion of nonperforming assets, up $1.225 billion from $435 million at the end of the third quarter, with $1.187 billion of the increase representing Franklin restructured loans."

In the January 17, 2008 press release, Huntington's CEO Hoaglin said "Clearly the

biggest setback was the significant negative impact associated with the previously announced

restructuring of the Franklin relationship acquired in the Sky Financial merger. However, we

firmly believe that the specific reserves we have established and the positive cashflow coverage resulting from the restructuring address fully the current and anticipated financial performance issues associated with this relationship. As such, we do not anticipate any further negative impact from this relationship. . . ."

On January 17, 2008, Huntington's common stock closed at $11.35 per share, down 8.69% from its closing price the day before. On January 18, 2008, Huntington's common stock closed at $10.66 per share, down 6.08% from its closing price the day before and down 14.24% from its closing price the day before Huntington's January 17, 2008 press release.

In March 2008, Huntington issued its 2007 Annual Report on Form 10-K. Huntington reported in its 2007 Annual Report that its "2007 net income of $75.2 million and earnings per common share of $0.25" "compared unfavorably with net income of $461.2 million and earnings per common share of $1.92 in 2006," and that "the credit deterioration of the Franklin relationship late in 2007, acquired as part of the Sky Financial merger, was the largest setback to 2007 performance." Huntington reported that the Franklin Credit relationship had a negative impact on Huntington's 2007 performance of $423.6 million pretax, $275.4 million after-tax, and that this charge against earnings "represents our best estimate of the inherent loss within this credit relationship." Huntington reported on page 22 that "[o]n December 28, 2007, the loans associated with Franklin were restructured, resulting in a $405.8 million provision for credit losses and a $17.9 million reduction of net interest income." In his March 10, 2008 letter to shareholders accompanying Huntington's 2007 Annual Report, Huntington's CEO Hoaglin wrote that

> By far the biggest disappointment of 2007 occurred with the $424 million pre-tax earnings charge we took in the fourth quarter associated with our credit exposure to Franklin Credit Mortgage Corporation. . . . [W]e believe the actual pre-tax charge to earnings of $424 million represents our best estimate of the inherent

loss within this credit relationship. This has been a deeply disappointing and painful experience.

In its 2007 Annual Report, Huntington discussed at page 25 the significant items influencing its earnings performance and reported that the broader decline in the market had a $95.4 million negative impact on earnings, compared to the much worse $423.6 million negative impact of the Franklin Credit relationship restructuring.

Huntington's own press releases and public statements establish the materiality of Sky Financial's false and misleading statements and omissions with respect to matters related to Franklin Credit in the Sky Financial/Waterfield Registration Statement and Amended Registration Statement.

Pursuant to Sky Financial's Registration Statement and Amended Registration Statements in connection with its acquisition of Waterfield, plaintiff and the class members exchanged their Waterfield stock for Sky Financial stock.

V.

Causes of Action

No. 1 – Violation of § 11 of the Securities Act of 1933

Plaintiff incorporates all of the allegations above.

Huntington (as a result of the misconduct of its predecessor in interest Sky Financial) violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Sky Financial filed its Registration Statement and Amended Registration Statement with the SEC. Defendants Adams and Thompson are liable under § 11 because they signed the Registration Statement and Amended Registration Statement. Adams also is liable because he was named as a director in the Registration Statement and Amended Registration Statement.

Plaintiff and the class members are entitled to recover damages from Huntington as the

issuer of securities acquired by plaintiff and the class members within the meaning of § 11, are entitled to recover damages from Adams and Thompson as senior executive officers involved in preparing the Registration Statement and Amended Registration Statement and occupying a senior executive position at the time the Registration Statement and Amended Registration Statement was declared effective, and are entitled to recover damages from Adams as a director of Huntington at the time the Registration Statement and Amended Registration Statement were declared effective.

The Registration Statement and Amended Registration Statement contained untrue statements of material fact or omitted to state material facts required to be stated or necessary to make other statements not misleading. Neither the defendants nor Sky Financial made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Amended Registration Statement were true or that there were no omissions of material fact necessary to make the statements made in the Registration Statement and Amended Registration Statement not misleading.

At the time they exchanged their Waterfield stock for Sky Financial stock (which later was converted to Huntington stock), plaintiff and the class were without knowledge of the untruths and omissions in the Registration Statement and Amended Registration Statement. Defendants' misrepresentations and omissions were material and would have been important information to a reasonable investor reviewing the Registration Statement and Amended Registration Statement.

Plaintiff and the class members acquired their Sky Financial stock (which later was converted to Huntington stock) pursuant to the defective and misleading Registration Statement and Amended Registration Statement. Plaintiff and the class members have sustained damages

as a result of defendants' violations of § 11 of the Securities Act and are entitled to recover damages under § 11(e).

Defendants Adams and Thompson also are liable for the § 11 violations at issue because, under § 15 of the Securities Act, they were Control Persons of Sky Financial.

No. 2 – Violation of § 12(2) of the Securities Act of 1933

Plaintiff incorporates all of the allegations above.

Huntington violated § 12(2)(a) of the Securities Act of 1933, 15 U.S.C. § 77l(2)(a).

Plaintiff and the class purchased Sky Financial stock when they exchanged their Waterfield stock for Sky Financial stock in connection with Sky Financial's acquisition of Waterfield. Sky Financial sold the Sky Financial stock to plaintiff and the class by means or instruments of transportation or communication in interstate commerce or the mails, and by means of a proxy statement/prospectus or oral communication, which included an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading. At the time they exchanged their Waterfield stock for Sky Financial stock and acquired the Sky Financial stock, plaintiff and the class did not know of such untruth or omission and in the exercise of reasonable care could not have known of such untruth or omission.

Sky Financial's misrepresentations and omissions were material and would have been important information to a reasonable investor reviewing the Registration Statement and Amended Registration Statement including the proxy statement/prospectus.

Plaintiff and the class members have sustained damages as a result of Huntington's violations of § 12(a)(2) of the Securities Act and are entitled to recover damages. With respect to the Huntington stock they still own, plaintiff and the class members are entitled to tender (and

do tender) their Huntington stock upon return of the consideration paid, plus interest. With respect to the Huntington stock they have sold, plaintiff and the class members are entitled to recover damages. Plaintiff and the class members will tender the securities sued on at such time and to such persons as the Court may direct.

Defendants Adams and Thompson also are liable for Huntington's § 12 violations because they were Control Persons under § 15 of the Securities Act.

<u>No. 3 – Control Person Liability</u>

Plaintiff incorporates the allegations above.

Section 15 of the Securities Act of 1933 provides for Control Person liability for any person who directly or indirectly controls a seller or issuer. Defendants Adams and Thompson were Control Persons within the meaning of § 15.

Adams and Thompson had day-to-day operational control over Sky Financial and had access on a daily basis to material non-public information regarding Sky Financial's business, operations, financial position, lending relationships, and prospects.

Adams and Thompson exercised control over the operations and finances of Sky Financial at times relevant to this lawsuit. Adams and Thompson had the power to control the specific transactions and activities that constitute the primary violations of §§ 11 and 12 of the Securities Act – namely the false and misleading misrepresentations and omissions in the Registration Statement and Amended Registration Statement. Adams and Thompson had the power to control the content of the public statements and filings at issue in the case and that with respect to all the matters over which they had the powers in question, they exercised the same.

VI.

Class Action Allegations

Plaintiff brings this action as a class action pursuant to FRCP 23 on behalf of all persons who purchased or otherwise acquired Sky Financial common stock in connection with and as a result of Sky Financial's October 2006 acquisition of Waterfield. Defendants are not class members and, in any event, are excluded from the class.

The members of the class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits and efficiencies to the parties and the Court. When Sky Financial acquired Waterfield in October 2006, there were approximately 91 shareholders of Waterfield.

There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the class members predominate over questions that may affect individual class members. These common questions of law and fact include:

1.  whether defendants violated § 11 of the Securities Act of 1933,

2.  whether defendants violated § 12 of the Securities Act of 1933,

3.  whether Adams and Thompson are Control Persons under § 15 of the Securities Act of 1933,

4.  whether defendants omitted and/or misrepresented material facts,

5.  whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading,

6.  whether defendants knew or deliberately disregarded that their statements were false and misleading;

7.  the extent of damage sustained by the class and the appropriate measure of damages.

Plaintiff's claims are typical of those of the class because plaintiff and the class members

sustained damages as a result of defendants' wrongful conduct.

Plaintiff adequately will protect the interests of the class and has retained competent counsel experienced in class action securities litigation. Plaintiff has no interests that conflict with the interests of the class.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VII.

### Damages

Section 11(e) provides the formula for calculating § 11 damages. With respect to the Sky Financial (now Huntington) stock that plaintiff and the class members still hold, they are entitled to recover the difference between the amount they paid for their Sky Financial (now Huntington) stock and the value of the stock at the time suit is brought. With respect to the Sky Financial (now Huntington) stock that plaintiff and the class members sold after Huntington's November 16, 2007 announcement, they are entitled to recover the difference between the amount they paid for their Sky Financial (now Huntington) stock and the price at which they sold the stock. Section 11(e) provides:

> The suit authorized under subsection (a) of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought: Provided, That if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated

therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

Section 12 provides the formula for calculating § 12 damages. Under § 12(a), plaintiff and the class members are entitled to "recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." Section 12(b) provides

> In an action described in subsection (a)(2) of this section, if the person who offered or sold such security proves that any portion or all of the amount recoverable under subsection (a)(2) of this section represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading, then such portion or amount, as the case may be, shall not be recoverable.

Sky Financial's violations of the Securities Act of 1933 deprived plaintiff and the members of the class of the opportunity to consider important information that reasonable shareholders would have wanted to know and deprived them of the opportunity, for example, to reject the Sky Financial/Waterfield acquisition, to require more cash or more stock in connection with the acquisition, or to take other action to address the material matters that Sky Financial omitted, misleadingly characterized, and misstated.

Plaintiff and the members of the class seek and are entitled to tens of millions in dollars of actual damages.

## Demand for Jury Trial

Plaintiff demands a jury trial.

<u>Relief Sought</u>

Plaintiff requests that this Court declare this action to be a proper class action under FRCP 23, and request that plaintiff and the class have judgment against defendants and recover from defendants:

- actual damages,

- pre-judgment and post-judgment interest at the maximum legal rate,

- costs of court,

- attorneys' fees and expenses,

- such other and further relief to which plaintiffs and the class justly is entitled.

Respectfully submitted,

By: _____

Geoffrey J. Moul, Trial Attorney
Ohio Bar No. 0070663
Brian K. Murphy
Murphy Murphy Moul + Basil LLP
Ohio Bar No. 0070654
1533 Lake Shore Drive
Columbus, OH 43204
Telephone: (614) 488-0400
Fax: (614) 488-0401
moul@mmmb.com
murphy@mmmb.com

Geoffrey L. Harrison
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 653-7807
Fax: (713) 654-3367
gharrison@susmangodfrey.com

Justin A. Nelson
Susman Godfrey L.L.P.
1201 Third Avenue #3090
Seattle, WA 98101
Telephone: (206) 516-3867
Fax: (206) 516-3883
jnelson@susmangodfrey.com

Attorneys for Plaintiff and the Class

EXHIBIT

tabbies

1

### Certification of Rick Tom

I, Rick Tom, declare the following:

(i) I have reviewed the complaint and authorized its filing;

(ii) I did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws;

(iii) I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

(iv) I have made the following transactions in the security that is the subject of the complaint during times relevant to the matters at issue in the complaint;

| Date | Transaction | Quantity | Price |
|------|-------------|----------|-------|
| 11/20/06 | Waterfield shares exchanged for SKYF | 3017 | $25.18 |
| 12/6/06 | SKYF shares gifted to sons | 1000 | $24.75 |
| 12/27/06 | SKYF shares dividend | 17.35 | $28.49 |
| 3/28/07 | SKYF shares dividend | 18.44 | $27.03 |
| 6/25/07 | SKYF shares dividend | 18.60 | $27.04 |
| 7/3/07 | SKYF shares exchanged for HBAN | 2274 | |
| 8/8/2007 | HBAN shares sold | 1274 | $18.00 |
| 9/26/07 | HBAN shares dividend | 15.11 | $17.18 |
| 11/30/07 | HBAN shares sold | 508 | $15.75 |
| 3/3/08 | HBAN shares sold | 507.11 | $12.45 |

(v) There is no other case in the past three years in which I have sought to serve, or served, as a representative party on behalf of a class; and

(vi) I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the court in accordance the law.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Signed by: _____     On May __6__, 2008
                    Rick Tom

825696v1/010571